IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ryan Neil Stack, )<br>)<br>          Movant, )<br>)<br>vs. )<br>)<br>United States of America, )<br>)<br>          Respondent. )<br>_____ ) | Criminal No. 2:16-0057<br><br>**OPINION AND ORDER** |

Movant Ryan Neil Stack is an inmate in custody of the Bureau of Prisons. He seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## BACKGROUND

On January 13, 2016, a federal grand jury returned a three-count Indictment charging Movant with conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; possession of a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and attempt to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. On September 23, 2016, Movant proffered a plea agreement in which he pleaded guilty to Count One and the government agreed to dismiss Counts Two and Three at sentencing. *See* ECF Nos. 167, 170.

The United States Probation Office ("USPO") prepared a presentence investigation report (PSR), which reflects that Movant's criminal history score was zero and his criminal history

category was I.  The PSR attributed 19,899.6 kilograms of marijuana equivalent to Movant, for a base offense level of 34.  Movant received a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) upon the determination that he had possessed a dangerous weapon during the commission of the crime, for an adjusted offense level of 36.  The PSR also credited Movant with an adjustment for acceptance of responsibility, which reduced Movant's adjusted offense level by three levels to a total offense level of 33.  Movant's Guidelines range was 135 to 168 months of imprisonment, and the penalty associated with Count One carried a 10-year (120-month) statutory mandatory minimum.  Prior to sentencing, Movant submitted a memorandum, in which he asked for a downward variance on the basis of the 18 U.S.C. § 3553(a) factors and objected to USPO's application of the § 2D1.1(b)(1) gun enhancement.  ECF No. 206.  Movant argued that the subject firearm was a .22 caliber rifle that he lawfully owned for the purpose of hunting small game and that, while the gun was present at his home when he was arrested for the underlying offense, it did "not have more than an incidental connection to the offense."  *Id.* at 6.  Movant submitted that without the gun enhancement, he would qualify for the safety valve provision set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.  On application of the safety valve, he argued, his offense level would drop to 17 and his Guidelines range would be reduced to 24 to 30 months, and the court could sentence him without regard to the statutory mandatory minimum.

At the sentencing held March 28, 2017, the court adopted the PSR without change, overruled Movant's objection to the gun enhancement, granted the motion for a downward variance, and sentenced Movant to custody of the Bureau of Prisons ("BOP") for a term of incarceration of 120 months, to be followed by a term of supervised release of 5 years.  The court entered judgment on April 4, 2017, ECF No. 215, and Movant did not appeal.

On April 16, 2018, Movant filed the pending § 2255 motion. ECF No. 295. In response, on June 7, 2018, the government filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 308. Movant thereafter filed a combined reply in support of his motion and response to the government's motion. ECF No. 314.

## DISCUSSION

**A.     Legal Standard**

A federal prisoner in custody may challenge the fact or length of his detention by filing a motion pursuant to 28 U.S.C. § 2255. To receive relief under § 2255, a movant is required to prove by a preponderance of the evidence that his sentence was imposed in violation of the Constitution or laws of the United States; or that the court was without jurisdiction to impose such sentence; or that the sentence was in excess of the maximum authorized by law; or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If this showing is made, the court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial to correct the sentence as may appear appropriate." *Id.* at § 2255(b). If, on the other hand, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court may summarily deny the petition without holding a hearing. 28 U.S.C. § 2255(b) (providing that a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief); *see* Rule 4(b), Rules Governing Section 2255 Proceedings. Generally, when a movant attacks his sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. *See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing *United States v.*

*Frady*, 456 U.S. 152, 167-68 (1982)); *United States v. Maybeck*, 23 F.3d 888, 891-92 (4th Cir. 1994).[1]

**B.     Analysis**

Movant seeks a correction of his sentence on two claims of ineffective assistance of counsel: his guilty plea was not given knowingly and voluntarily; and counsel failed to argue at sentencing the correct standard for whether Movant was eligible for application of the safety valve.  ECF Nos. 295, 295-1 at 1-2.

Criminal defendants are entitled to effective assistance of counsel.  U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685 (1984).  A lawyer "is constitutionally ineffective where her representation falls below objective standards of reasonableness and results in prejudice, meaning there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *United States v. Freeman*, --- F.3d ----, 2021 WL 1180711, at *4 (4th Cir. Mar. 30, 2021) (quoting *Strickland*, 466 U.S. at 687-88, 694); *Hinton v. Alabama*, 571 U.S. 263, 275 (2014).  "A finding of ineffective assistance ultimately will result when counsel's conduct 'so undermined the proper functioning of the adversarial process' that the proceedings below 'cannot be relied on as having produced a just result.'"  *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (quoting *Strickland*, 466 U.S. at 686).  Notably, however, "judicial scrutiny of counsel's performance must be highly deferential."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

---

[1] Additionally, a movant must file a § 2255 motion within a specific period of time.  No one contests the timeliness of Movant's motion.

1. <u>Guilty Plea</u>

Movant's first contention asserts that he agreed to plead guilty because counsel misrepresented to him his sentencing exposure under the Sentencing Guidelines and because counsel promised that he would be accepted into the diversionary BRIDGE Program. ECF No. 295-1 at 1-2. Movant attests that counsel told him he would qualify for the safety valve and would therefore face a Guidelines range of 18 to 24 months. ECF No. 295-2 at ¶ 3. Movant asserts that it is "evident from the record that defense counsel had a fundamental misunderstanding of the application of the U.S. Sentencing Guidelines to [my] case," because he believed that application of the safety valve "would have resulted in an offense level of 17, and Guideline range of 18 to 24 months imprisonment [sic]." *Id.* at 9. In actuality, Movant explains, application of the safety valve mandates that where the "statutorily required minimum sentence is at least five years, the offense level . . . shall not be less than 17." *Id.* In other words, "[w]hat counsel misinterpreted as a starting point for the offense level is instead a minimum." *Id.* Movant also attests that counsel advised him that if he pleaded guilty he would be accepted into the BRIDGE Program, "which would provide an alternative to prison time." ECF No. 295-2 at ¶ 4. Movant received word the week prior to his sentencing that the BRIDGE Program had declined to accept him. ECF No. 295-1 at 11. Movant attests that but for counsel's misinformed advice about the applicable Guidelines range and misguided promise about the BRIDGE Program, he would not have pleaded guilty and rather would have elected to go to trial. ECF No. 295-2 at ¶¶ 5, 7.

In a combined response and memorandum in support of motion to dismiss or, in the alternative, motion for summary judgment, the government responds that Movant's attestations and contentions "are in direct contradiction to the sworn statements made by [him] at his change

of plea hearing, where he unequivocally stated that he was entering his plea freely and voluntarily and had not been promised anything other than what was outlined in his plea agreement . . . ." ECF No. 308-1 at 3-4. The government also asserts that counsel denies making any promises to Movant and rather attests that he never told Movant he would be eligible for safety valve relief and likewise never guaranteed to Movant enrollment in the BRIDGE Program. *Id.* at 4. ECF No. 308-2 at ¶¶ 5, 6-8, 11, 13. The government further notes that Movant's insistence that he would have proceeded to trial but for counsel's misrepresentations "ignores the obvious benefits that [Movant] received" as a result of his plea agreement. ECF No. 308-1 at 4. To wit, "[n]ot only did the Government agree to dismiss a count that carried a mandatory minimum five year consecutive sentence if [Movant] provided substantial assistance, but it also allowed for the possibility of him receiving even more credit for cooperation"; and "[i]t also allowed [Movant] to receive a three-level reduction in his guidelines for acceptance of responsibility," which he would not have received had he gone to trial. *Id.* Rather, had Movant gone to trial, the government asserts, his Guidelines range would have been 188 to 235 months, instead of the 135 to 168-month range, from which the court varied downward in imposing a 120-month sentence. Additionally, had Movant gone to trial and had he been convicted on Count Two, he would have received an additional 5-year sentence consecutive to any other term. The government further contends that following a trial and conviction, it is likely Movant would not have received a downward variance. Finally, the government posits that a conviction at trial was highly likely, given the "overwhelming evidence of [his] guilt": "[he] was arrested after he was caught literally holding a package that he believed held almost a kilogram of crystal methamphetamine"; "[o]ther defendants [] provided historical information on their dealings with

6

[Movant]"; and "[Movant] also admitted that everything found in his residence was his." *Id.* at 5.

In reply, Movant emphasizes the government's failure to address the contention that counsel displayed a fundamental lack of knowledge with respect to the Sentencing Guidelines when he argued in court that application of the safety valve would result in a reduction of his offense level from 33 to 17, and a corresponding reduction in his Guidelines range to 18 to 24 months. ECF No. 314 at 3. Movant also asserts that in light of the competing affidavits that he and counsel have presented attesting to facts material to the dispute, the court must hold an evidentiary hearing. *See United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004).

The court agrees that the competing affidavits create a dispute of material fact.[2] Movant does not, however, address the government's arguments regarding prejudice. Movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial instead." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Movant asserts that had he known he would not be accepted into the BRIDGE Program and rather, if convicted, would be subject to at least a 120-month sentence on Count One and a 60-month sentence on Count Two, he would have elected to proceed to trial. But this assertion appears implausible in the face of what the government describes in its brief: had Movant gone

---

[2] Neither party filed a copy of the transcript of the plea hearing, though it is not entirely clear that any such transcript could resolve the dispute identified here. *See White*, 366 F.3d at 296 ("*no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a per se rule rendering it 'uniformly invulnerable to subsequent challenge'*") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73 (1977)) (emphasis added in *White*). *But see United States v. Mayhew*, --- F.3d ----, 2021 WL 1522130, at *6 (4th Cir. Apr. 19, 2021) (recognizing that a trial court can correct alleged misadvice from counsel during Rule 11 hearing, such that movant "will not be able to show the necessary causal link between counsel's error and his decision to plead guilty") (citations omitted).

7

to trial, he would have faced three counts; if convicted, he would have received two statutory mandatory minimum sentences, to run consecutively; and he would have been exposed to a much higher Guidelines range. Notably, the evidence the government describes, and which Movant does not dispute, suggests a strong possibility if not a likelihood of a conviction. For these reasons, the court is not persuaded, counsel's alleged misrepresentations and inaccurate advice notwithstanding, that there is a reasonable probability that Movant would in fact have elected to go to trial.

Accordingly, the court finds that while there may be a dispute of material fact concerning the deficient performance prong, summary dismissal is appropriate because Movant's allegations do not demonstrate prejudice. Therefore, the court concludes that counsel was not constitutionally ineffective with respect to Movant's guilty plea. The court turns next to Movant's contention regarding counsel's errors at the sentencing hearing.

2. <u>Sentencing</u>

   a. <u>Arguments and Legal Authority</u>

Movant's second contention asserts that counsel's lack of familiarity with the Sentencing Guidelines resulted in his uninformed decision to concede that the § 2D1.1(b)(1) gun enhancement precluded Movant from qualifying for the safety valve. Movant argues that had counsel raised the appropriate objection that the gun enhancement did not necessarily render him ineligible, the court may have applied the safety valve and imposed a sentence below the 10-year mandatory minimum. Movant asserts that counsel's failure to raise the argument constitutes deficient performance because there exists Fourth Circuit precedent allowing for application of the safety valve notwithstanding the § 2D1.1(b)(1) enhancement and recognizing that the

"clearly improbable" standard of proof applicable to overcoming that enhancement is different from the preponderance of evidence standard applicable to satisfying § 5C1.2(a)(2).

The government responds that "[w]hile it does not believe [Movant] can satisfy either prong of *Strickland*, even if this Court finds that counsel should have made such an argument, there was no prejudice." ECF No. 308-1 at 5. The government asserts that the sentencing transcript reflects that the court considered Movant's argument that he possessed the gun for hunting purposes only and the record demonstrates that Movant would not have been able to satisfy the preponderance of evidence standard. *Id.* at 5-6.

In reply, Movant emphasizes that his counsel did not recognize that different standards of proof apply to the two different arguments and disagrees that the argument would have been meritless. ECF No. 314 at 5-6.

The court begins by reviewing the two Guidelines provisions at issue here. Section 2D1.1(b) of the Guidelines provides for a two-level increase of the offense level in drug-trafficking cases if the defendant possessed a dangerous weapon. The commentary with respect to this subsection states in relevant part:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it *is clearly improbable* that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

USSG § 2D.1.1(b) cmt. n.11(a) (emphasis added).

Section 5C1.2(a) provides for a two-level reduction of the offense level in drug-trafficking cases if a set of five criteria is met, which set includes that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or

induce another participant to do so) in connection with the offense." USSG § 5C1.2(a)(2).[3] *See* USSG § 2D1.1(b)(18). To receive the reduction, a defendant must prove by a preponderance of the evidence that he or she satisfies each of the five criteria. *See United States v. Aidoo*, 670 F.3d 600, 607 (4th Cir. 2012); *United States v. Thompson*, 554 F.3d 450, 455 (4th Cir. 2009).

Movant cites for support, *United States v. Bolton*, 858 F.3d 905 (4th Cir. 2017), in which the Fourth Circuit had occasion to address the interplay between §§ 2D1.1(b) and 5C1.2(a) on the defendant's direct appeal of his sentence. Relevant to our analysis, the *Bolton* court considered the district court's failure to apply separate analyses in its assessment of whether the firearm enhancement and safety valve provision applied. As the *Bolton* court explained, with respect to the gun enhancement, the government carries the initial burden of proving by a preponderance of the evidence that the defendant possessed "a weapon in connection with drug activities." *Bolton*, 858 F.3d at 912 (quoting *United States v. Manigan*, 592 F.3d 621, 632 n.8 (4th Cir. 2010)). If the government satisfies its burden, the defendant may avoid the enhancement by showing that the weapon's connection to his or her drug activities was "clearly improbable." *Id.* With respect to showing a connection, the government must demonstrate "a temporal and spatial relation linking the weapon, the drug trafficking activity, and the defendant." *Id.* (citations omitted). Where the underlying offense is conspiracy to distribute drugs, the discovery of a weapon "'in a place where the conspiracy was carried out or furthered' is sufficient to link the weapon to the conspiracy." *Id.* (quoting *United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992)). By contrast, the defendant bears the burden of proving by a preponderance of the evidence that he or she satisfies the five safety valve criteria.

---

[3] This is referred to as the "safety valve" reduction because it allows for shorter sentences for first-time offenders who are otherwise facing mandatory minimum sentences. *See United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir. 1996).

In noting that "[t]his is not a distinction without a difference," the *Bolton* court considered that at least five of its sister circuits had held that "a weapon enhancement pursuant to § 2D1.1(b)(1) does not foreclose a safety valve reduction despite § 5C1.2(a)(2)'s requirement that a defendant seeking the reduction did not possess a firearm in connection with the offense." *Bolton*, 858 F.3d at 914 (citing cases from the First, Sixth, Ninth, Tenth, and Eleventh Circuits). In concluding that the district court's error in "circumscrib[ing] its analysis on the safety valve reduction in light of the weapon enhancement," was harmless, the court observed that the decision was well reasoned: "The court discredited Appellant's witness, made note of the fact that the proffered hunting license was expired when law enforcement discovered the firearms, and reasoned that the status of the shotgun as reportedly stolen 'undermines any suggestion of a legitimate acquisition.'" In light of those factual findings, the *Bolton* court explained, the defendant "failed to show by a preponderance of the evidence that the firearms were not connected to his drug distribution, which the cash and drugs located in the very same bedroom evinced." *Id.*[4]

    b.  Deficient Performance

The Fourth Circuit decided *Bolton* in June of 2017, approximately two months after Movant was sentenced. With respect to ineffective assistance of counsel claims as a basis for habeas relief, the Fourth Circuit has advised that "[t]he performance prong is satisfied when counsel provides reasonably effective assistance, including demonstrating legal competence, doing relevant research, and raising important issues." *Carthorne*, 878 F.3d at 465 (citations

---

[4] The court notes that the *Bolton* court reviewed the defendant's arguments according to a plain error standard, which the Fourth Circuit has explained is complimentary to but different from the standard used for ineffective assistance of counsel claims. *See Carthorne*, 878 F.3d at 465-66.

omitted). "[C]ounsel must raise a material objection or argument if 'there is relevant authority strongly suggesting' that it is warranted." *United States v. Morris*, 917 F.3d 818, 824 (4th Cir. 2019) (quoting *Carthorne*, 878 F.3d at 466, 469). To be constitutionally effective, however, "counsel need not identify *all* plausible arguments" or nonfrivolous objections. *United States v. Palacios*, 982 F.3d 920, 925 (4th Cir. 2020) (citing *Morris*, 917 F.3d at 826) (emphasis in original). The Fourth Circuit evaluates claims of ineffective assistance "against the strength of case law as it existed at the time of the allegedly deficient representation," but does so according to a review that is "highly deferential." *Palacios*, 982 F.3d at 925 (quoting *Carthorne*, 878 F.3d at 465).

Accordingly, the salient question here is whether the pre-*Bolton* authority for arguing that the gun enhancement did not preclude application of the safety valve was so strong in March 2017, when Movant was sentenced, as to render counsel's performance deficient because he did not raise the argument. In deciding *Bolton*, and with respect to the issues of concern here, the Fourth Circuit did not cite to any of its own caselaw or to any decisions, published or otherwise, from the district courts within the Circuit. The *Bolton* court cited only to the decisions of its five sister circuits. However, those circuit courts published their decisions between 2000 and 2013, well before this court sentenced Movant. And, prior to deciding *Bolton*, the Fourth Circuit issued at least two unpublished decisions in which it differentiated between the standards of proof applicable to §§ 2D1.1(b) and 5C1.2(a). *See United States v. Levasseur*, 449 Fed. Appx. 297 (4th Cir. 2011); *United States v. Grose*, 254 Fed. Appx. 190 (4th Cir. 2007). Additionally, the standards of proof applicable to the gun enhancement and safety valve provision were well-established by the time of Movant was sentenced.

The court acknowledges the deference owed to counsel and notes as well that the question is close. However, the court finds that the argument counsel failed to raise—that Movant remained eligible for safety valve relief—was foreshadowed in existing case law, which fairly basic research would have located. This argument was not novel, nor did it require counsel to "anticipate changes in the law, or to argue for an extension of precedent," all of which represent the type of effort the Fourth Circuit has expressly held is not necessary to pass constitutional muster. *Palacios*, 982 F.3d at 924 (holding that counsel's failure to raise a challenge based on double jeopardy safeguards did not constitute ineffective assistance of counsel because *inter alia* the defendant could "not point to any contemporary case in which a court [had] accepted his double jeopardy argument," indeed, "at the time of [his] trial, no court had addressed the issue") (citation omitted). And, furthermore, the argument pertains to a point of law that is fundamental to Movant's sentencing: Movant argues he otherwise qualified for safety valve relief, which would have permitted the court to sentence him below the statutory mandatory minimum of 120 months and would have lowered his offense level to 31, resulting in a Guidelines range of 108 to 135 months. *See Carthorne*, 878 F.3d at 466 (advising that counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance.") (citation omitted).

The court finds that Movant has demonstrated deficient performance and therefore turns to consider whether he has also demonstrated prejudice.

    c. <u>Prejudice</u>

As noted above, both parties cite to the sentencing transcript as supporting their respective positions. The relevant excerpts are as follows:

Counsel: The hunting rifle that he owned was a .22 caliber rifle as used for small game purposes . . . it was leaning against a wall in his home.

. . . .

Government: And when you look at the facts here, again, it's a rifle that can be used and probably was used for hunting purposes, but we've also got a loaded rifle in a bedroom with drug paraphernalia, ledgers, he's getting drugs brought to him at that location, multi-ounce quantities of drugs, which he's presumably storing for some period of time before he can get rid of them, packaged for redistribution and get rid of them. So to find it clearly and probable that they be connected, I think the Court would have to come to a conclusion that, for instance, if someone were to try to rob Mr. Stack of his drugs or his drug proceeds, that that gun wasn't available for him to use; and it clearly was. So again, while it could have more than one purpose, I think that when you look at whether it was clearly improbable if the weapon was connected to the offense, I don't think they've met that burden, I don't think the facts of this case bear that out, and I think the enhancement was appropriate.

. . . .

Counsel: A small game hunting rifle was leaning up the wall of a bedroom. And the sham load in this case, Your Honor, was actually in an anteroom to that gun. Now, was it there? Absolutely. Was it utilized? Was it connected with this transaction? No.

. . . .

The Court: So let me make sure I understand the gun. It was a .22 rifle that had the appearance of an assault rifle, and it was in the bedroom and it was loaded and –

Counsel: Well, on the issue of it being loaded, Your Honor, we did not – there is a picture of an evidence bag full of bullets, which law enforcement alleges was in the gun, but as far as evidence of it being loaded, we don't have that.

The Court: All right. And there was also nine millimeter ammunition near the gun?

Counsel: I believe that there was other ammunition within the house, yes.

The Court: Okay.

Counsel: But –

    Government:   Your Honor, to the extent that whether the gun being loaded at the time matters, there was also, in discovery, a picture of a magazine with ammunition from it that the detectives who took those pictures tell me was taken after the magazine was removed from the firearm.

    Counsel:   Your Honor, with all to respect to [the government], maybe we need to take a conference. I have not seen that; that has not been produced.

    The Court:   Do you have that picture?

    Government:   I don't have the pictures with me, I didn't know – I will say this, whether I'm accurate or not, that's my recollection. What I do recall is we've had specific conversations either on e-mail or over the phone or in person, where the detective who recovered that gun stated that the picture of the ammo that he sees is ammo that was taken from the gun.  So –

    Counsel:   That part, I think I – I think that's what I said.

    The Court:   Okay.

    Government:   You know, guns aren't see-through, you can't take a picture of a gun and see that there's actual ammunition in the gun. So the test, had it been necessary, the officers – the detective who recovered that weapon and emptied the ammunition out of there, would have testified that yes, the gun was loaded when they got it.

    The Court:   Response?

    Counsel:   I think you've heard enough from me on that point.

    . . . .

    The Court:   With regard to the objection on paragraph 36 regarding dangerous weapon possession, that objection is overruled. I find that the case law supports the enhancement based on the location of the weapon to the drugs. And the fact that the ammunition was found with the gun.

ECF No. at 308-3 at 2-7.

It is clear from the transcript that the court overruled the objection based on the presence of the gun and ammunition in proximity to the drugs.  At the time of sentencing no one disputed the presence of those three items in the home and Movant asserts no such dispute now.  On this basis, the court concludes that the factual finding at sentencing with respect to the objection

encompasses a ruling on whether Movant proved by a preponderance of the evidence that he did not possess the rifle in connection to the offense. Accordingly, the court further concludes that Movant has not demonstrated that counsel's error caused him prejudice.

For the reasons discussed, the court grants the government's motion, ECF No. 308, and denies without prejudice Movant's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 295.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the court is likewise debatable. *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is denied.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Charleston, South Carolina
April 22, 2021